**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

In re ZACHARY CLAY KOONTS,       )       Case No. 08-61880-LYN
                                 )
            Debtor.              )
                                 )

## MEMORANDUM

This matter comes before the court on a motion by the United States trustee to dismiss this case under 11 U.S.C. § 707(b)(3) as an abuse of the provisions of chapter 7 of the Bankruptcy Code. Zachary Clay Koontz ("the Debtor") opposes the motion. The motion will be denied.

### *Jurisdiction*

This court has jurisdiction over this matter. 28 U.S.C. §§ 1334(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Accordingly, this court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as directed by Fed.R.Civ.P. 52 which is made applicable in this contested matter by Fed. R. Bankr. P. 9014(c) and 7052.

1

*Facts*

On August 12, 2008, the Debtor filed a chapter 7 petition.  The Debtor is single and has no children.  The Debtor scheduled a one-half interest in real property commonly known as 16233 Gibson Mill Road, Culpepper, Virginia ("the Real Property") as property of the estate.[1]  The Debtor scheduled the Debtor's interest in the Real Property at a fair market value of $184,200.00.  The Real Property secures a first mortgage debt in the amount of $206,000.00 and a second mortgage debt in the amount of $52,069.46.[2]  The Debtor scheduled no priority unsecured claims and scheduled general unsecured claims in the amount of $55,998.00.[3]

The Debtor scheduled monthly gross income on Schedule I at $4,833.34 per month, net income of $3,397.85, and expenses of $3,767.56.  The Debtor's calculated Current Monthly Income ("CMI") on Form B22A is $3,829.49, an amount that is less than the median income for a family of one in Virginia.

The United States trustee's motion to dismiss this case for abuse is brought under Section 707(b)(3)(B).

*Discussion.*

The United States trustee brings this motion on the grounds that it would be an abuse of chapter 7 to permit the Debtor to continue prosecuting this case under that chapter.  Because the Debtor is a below-median income debtor, the motion to dismiss is brought under 11 U.S.C. § 707(b)(1)&(3) as revised by the Bankruptcy Abuse Prevention and Consumer Protection Act of

---

[1] See Debtor's Schedule A.

[2] See Debtor's Schedule A.

[3] See Debtor's Schedules E & F.

2

2005 ("BAPCPA").[4]

I.

Section 707(b)(1)[5] provides that a court may dismiss an individual case under chapter 7 if (1) the debtor's debts are primarily consumer debts and (2) it would be an abuse of the provisions of chapter 7 of the Bankruptcy Code to grant relief to the debtor. The parties agree that the Debtor's debts are primarily consumer debts. The only issue before the Court is whether it would be an abuse of the provisions of chapter 7 to grant relief to the Debtor.

Section 707(b)(2) provides that abuse is presumed if a debtor's net monthly income exceeds a certain threshold amount as determined by a mathematical test ("the Means Test") defined in the Bankruptcy Code. Because the Debtor is a below-median income debtor, Section 707(b)(2) is not applicable.

Section 707(b)(3) provides that, if the presumption in Section 707(b)(2) does not arise or is rebutted, the court shall consider "(A) whether the debtor filed the petition in good faith; or (B) [whether] the totality of the circumstances . . . of the debtor's financial condition

---

[4] Section 707(b) was revised and became effective on October 17, 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). See Pub. L. No. 109-8, 119 Stat. 23 (2005).

[5] Section 707(b) (1) provides:

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

3

demonstrates abuse." The first of these two separate and independent[6] tests is referred to herein as the Good Faith Test; the second is referred to herein as the Financial Situation Test.

Under the pre-BAPCPA law, the burden of production and the burden of persuasion in a motion to dismiss under Section 707(b) rested with the moving party. See 4 Collier on Bankruptcy, "Dismissal", ¶ 707.04[5][a], p. 707-27 (15th ed. rev.) (Citing Green v. Staples (In re Green), 934 F.2d 568 (4th Cir. 1991)). Collier concluded under pre-BAPCPA law that the burden was heighten because the former Code provided that "the court should give the benefit of any doubt to the debtor." Collier, supra. That language, however, has been removed from the Code. While the burden of proof is no longer heightened, the United States trustee must still meet the burden of production as well as the burden of persuasion by a preponderance of the evidence.

II.

Under Section 707(b)(3)(B), the Court must consider the totality of the circumstances of the Debtor's financial situation. This Court has previously held that it is abuse of the provisions of chapter 7 to permit a debtor to prosecute a case under that chapter if that debtor can fund a chapter 13 plan beyond some de minimis amount. See In re Lynch, 07-61043-LYN (2010). The Court has also determined that the measure of whether a debtor may fund a chapter 13 plan is to be determined under the disposable income test under chapter 13. Id.

Under chapter 13, a below-median income debtor must pay all of his projected disposable

---

[6] The fact that "bad faith" and the "totality of financial circumstances" are listed in the disjunctive is very strong evidence that Congress intended that bad faith and the totality of the debtor's financial circumstances constitute independent grounds for relief. See Eugene W. Wedoff, Means Testing in the New 707(b), 79 Am. Bankr. L.J. 231 (2005). A bankruptcy court may dismiss a case if it finds that the debtor filed the petition in bad faith, *or* that the totality of the circumstances of the debtor's financial situation demonstrates abuse. Each of the two considerations is potentially sufficient for a finding of abuse. The debtor's financial situation must, therefore, have some separate implication in the context of abuse apart from considerations of bad faith for all debtors and considerations of the means test in Section 707(b)(2) for above-median debtors.

income to the trustee for a minimum of three years. 11 U.S.C. § 1325(b)(1)(B). Disposable income is defined as monthly income received by the debtor less amounts reasonably necessary to be expended for the maintenance or support of the debtor and his or her dependents. 11 U.S.C. § 1325(b)(2). The majority of courts that have considered the issue have determined that Schedules I and J may be used for below-median income debtors under the BAPCPA to determine "projected disposable income." See, e.g., In re Dew, 344 B.R. 655 (Bankr. N.D.Ala. 2006); In re Schanuth, 342 B.R. 601 (Bankr. W.D.Mo. 2006) (using current monthly income less debtor's expenses on Schedule J); and In re Kibbe, 342 B.R. 411 (Bankr. D.N.H. 2006). This is the same measure that was used under the pre-BAPCPA bankruptcy code. Consequently, it is proper to determine the reasonable level of expenses using pre-BAPCPA law.

We now examine whether abuse exists in this case under Section 707(b)(3)(B). The inquiry focuses on the totality of the circumstances of the Debtor's financial situation beginning with the Debtor's ability to fund a chapter 13 plan.

*Gross and Net Monthly Income.* The Debtor scheduled monthly income as $4,833.34 on Schedule I. The United States trustee agrees with this amount. The Debtor has deducted $1,251.06 in payroll deductions and $184.43 in insurance. Both are allowable. The Debtor's net income after payroll deductions is $3,397.85.

*Housing & Communication Expenses.* The Debtor has scheduled a mortgage payment ($900.00); utilities ($175.00), communications expense; ($150.00); and garbage collection ($100.00). The United States trustee does not object to any of these deductions. The Debtor's housing and communication expenses total $1,325.00.

*Transportation Expenses.* The Debtor owns a 2001 Chevrolet Silverado 3500 ("the

Truck") and a 2004 Harley Davidson Sportster 883C ("the Motorcycle").  The monthly payments on the Truck are $277.64.  The monthly payments on the Motorcycle are $214.94.  If the Debtor were an above-median income debtor, he would be permitted to take the statutory deductions for both modes of transportation even though he is the only adult in the household.  See In re Styles, 397 B.R. 771, 774 (Bankr. W.D.Va. 2008) (Krumm, C.J.).  In Styles, as in the case at bar, the debtor was single and had no dependents.  The Court concluded that the debtor could take the statutory deduction for two vehicles because there is nothing in the statutes or the forms that indicates that a debtor's household size determines the number of vehicles that the debtor may own or claim on Form B22C.  It would be incongruous to permit an above-median income debtor to deduct expenses for two vehicles and to permit a below-median income debtor to deduct expenses for only one vehicle, under the same circumstances.  Accordingly, both payments will be allowed as deductible expenses.

The Court in Styles did note that a chapter 13 debtor may be required to explain the ownership of two vehicles to the extent that such ownership might indicate that the plan was not filed in good faith.  To the extent that the issue is relevant in the case at bar, it is concluded that the Debtor has good reason for the ownership of the Truck and the Motorcycle.  The monthly payment on the Motorcycle is $214.94.  If the Debtor surrendered the Motorcycle, he would incur additional monthly gasoline costs of $345.00.[7]  Surrendering the Motorcycle would not increase the Debtor's disposable income in a chapter 13 case.

The Debtor has also scheduled $750.00 in transportation expense other than vehicle payments.  The United States trustee argues that $500.00 is a reasonable amount for this

---

[7] This amount is calculated by taking the cost of gasoline using the Truck only and deducting the cost of gasoline using both the Truck and the Motorcycle ( = $879.00 -$529.00).  See discussion below.

expense. The Debtor is employed by JK Enterprises, a landscaping supply company.   He assists in managing three stores.   He drives a minimum of 115 miles per day, 23 days a month.  He uses the Motorcycle when weather permits.   His employment, however, requires use of the Truck to assist moving goods between the JK Enterprise's three locations.   The United States trustee calculated the Debtor's gasoline expense based on 20 days of employment per month and concluded that the Debtor would spend $874.00 per month for gasoline if he drove the Truck exclusively and $184.00 per month if he used the Motorcycle exclusively.  The United States trustee assumed a 50/50 usage ratio for the two vehicles and concluded that the Debtor's monthly gasoline expense would be about $500.00.  The average of the two amounts is $529.00. The United States trustee based the calculation on 20 days usage although the Debtor testified that he worked about 23 days per month.   The United States trustee also based the calculation on a per gallon price of $375.00, an amount that is significantly above the current price of gasoline. The Court concludes that the Debtor actually spends approximately $500.00 per month for gasoline.   This, however, does not take into consideration the cost of maintenance and repairs on the vehicles, an amount that could easily exceed $250.00.   Accordingly, transportation expense will be allowed in the amount of $750.00, the amount scheduled by the Debtor.  The Debtor's transportation expenses total $1,242.58 ( = $277.64 + $214.94 + $750.00).

*Other Expenses.*   The Debtor also schedules Food ($380.00); Clothing ($50.00); Laundry and Dry Cleaning ($30.00); Out-of-Pocket Medical and Dental Expenses ($100.00); Recreation ($100.00); Automobile Insurance ($300.00); and other miscellaneous expenses[8] ($175.00).   Theses expenses total $1,135.00.  The United States trustee does not object to the

---

[8]     These other miscellaneous expenses include paper goods, personal items, personal property, pet food, veterinarian care and vehicle inspection registration.

7

allowance of these expenses.

*Disposable Income.* The Debtor's net disposable income is $3,397.85. The Debtor's allowable expenses total $3,702.58 ( = $1,325.00 + $1,242.58 + 1,135.00). The Debtor's disposable income in chapter 13 would be negative $305.08.

*Additional Analysis.* The Truck will be paid for in ten months. The Motorcycle will be paid for in approximately 16 months. The United States trustee argues that at some point these facts would permit the Debtor to fund a chapter 13 plan. The United States trustee's argument does not take into account that the vehicles would be older and would require more maintenance and repairs. Even if the vehicles did not require additional costs, the Debtor would still not have sufficient disposable income to fund a chapter 13 plan. The Debtor's disposable income during a 36-month period is negative $10,982.88. The payment in full of the two vehicles would free up $11,732.38 { = ([36-10] X [$277.64]) + ([36-15] X [$214.94])}. The Debtor's income during the 36-month period would be $749.50 ( = $11,732.38 - $10,982.88), an amount that would be insufficient to pay his attorney, much less any creditors.

Additionally, if the Debtor were not permitted to deduct the payments on the Motorcycle for the remaining 15 months, the total available would be $3,973.60 ( = $749.50 +[15 X $214.94)), an amount that would leave less than $1,400 for creditors over a 36 month period after payments to the chapter 13 trustee and the debtor's attorney.[9] The Debtor's unsecured claims total approximately $55,998.00. If the Debtor were not allowed to deduct the Truck payments after it was paid for and if the Debtor were not allowed to deduct any of the Motorcycle payments, the unsecured creditors would receive a dividend of approximately 2.5%

---

[9] The Debtor's attorney would be paid a minimum of $2,500.00.

of their claims ($1,400.00 / $55,998.00).

This Court has generally held that a debtor must demonstrate the ability to pay unsecured creditors 20% before a chapter 13 plan could be confirmed.  It is consistent to require, and this court has held, that it is not abuse under Section 707(b)(3) if a debtor cannot pay his or her unsecured creditors a 20% dividend.  The few courts that have considered the issue of abuse under Section 707(b)(3)(B) for below-median income debtors have reached a similar conclusion. See In re Pennington, 348 B.R. 647 (Bankr. Del. 2006) (Level of abuse is 25% of unsecured debt.) and In re Pak , 343 B.R. 239 (Bankr. N.D.Cal. 2006) (Abuse existed when below-median income debtor could pay 19% of his unsecured debt through a 36-month plan.)

Under this scenario, the dividend that unsecured creditors would receive in this case, 2.5%, is well below the 20% threshold.  It must be concluded that it would not be abuse to permit him to prosecute his case under chapter 7.

### *III. Conclusion*

The burden of persuasion is on the United States trustee to prove by a preponderance of the evidence that the continued prosecution of this chapter 7 case would constitute abuse. The Debtor's monthly disposable income in a chapter 13 case would be negative.   Even if most of the United States trustee's arguments regarding expenses were valid, the Debtor could pay a dividend of no more than 2.5% to his unsecured creditors.  It is not an abuse of the provisions of chapter 7 to permit the Debtor to prosecute his case under that chapter.

### **ORDER**

For the above stated reasons, the motion of the United States trustee to dismiss this case for abuse shall be, and hereby is, denied.

So ORDERED.

Upon entry of this Memorandum and Order, the Clerk shall forward a copy to the United States trustee, the chapter 7 trustee, and Douglas E. Little, Esq.

Entered on this  12th  day of January, 2010.

_____
William E. Anderson
United States Bankruptcy Judge